MARSHALL HUGO MARTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 7762-92
United States Tax Court
T.C. Memo 1993-399; 1993 Tax Ct. Memo LEXIS 406; 66 T.C.M. (CCH) 582; August 30, 1993, Filed *406 Decision will be entered for respondent in the amount of $ 3,386.58. Marshall Hugo Martin, pro se. For respondent: Kenneth L. Bressler. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency of $ 5,640 against petitioner for Federal excise tax under section 4973(a) for 1988. After a concession by respondent, the sole issue is whether $ 56,443 in petitioner's Individual Retirement Account (IRA) on December 31, 1988, constituted an "excess contribution" under section 4973(b). Some of the facts were stipulated and are found accordingly. The stipulation and attached exhibits are incorporated herein by reference. Petitioner resided in Sulphur Springs, Texas, at the time he filed his petition. At the beginning of *407 1987, petitioner maintained an IRA with Shearson, Lehman, Hutton and Co. (E.F. Hutton IRA). On February 5, 1987, at petitioner's request, a check was issued to petitioner by Shearson, Lehman, Hutton and Co., for the entire balance of petitioner's E.F. Hutton IRA account, $ 111,615.57. A check was issued, payable to petitioner, for this amount. On the same day, February 5, 1987, after endorsing the check described above, petitioner personally deposited the check at Merrill, Lynch, Pierce, Fenner and Smith to open an IRA account (Merrill Lynch IRA). A withdrawal was made on May 8, 1987, from petitioner's Merrill Lynch IRA in the amount of $ 164,596.13. On July 7, 1987, petitioner deposited $ 120,000 into the same Merrill Lynch IRA account. Thereafter, on September 3, 1987, petitioner again withdrew funds from the Merrill Lynch IRA in the amount of $ 10,000. The last transfer of funds in 1987 took place on December 7th, when the entire balance in petitioner's Merrill Lynch IRA was transferred to an IRA with Charles Schwab and Co. (Charles Schwab IRA), in a direct transfer (trustee to trustee). In 1988, petitioner received a $ 16,000 distribution from his Charles Schwab IRA. *408 No additional contributions were made by petitioner to this IRA during 1988. On November 25, 1988, the balance in the Charles Schwab IRA was directly transferred to another IRA, Fidelity Investments (Fidelity IRA). On December 31, 1988, the balance in petitioner's Fidelity IRA account was $ 58,443. Petitioner's position is that the withdrawal from the E.F. Hutton IRA and subsequent deposit to the Merrill Lynch IRA on February 5, 1987, was a direct trustee-to-trustee transfer pursuant to Rev. Rul. 78-406, 1978-2 C.B. 157, and was not a qualified rollover under section 408(d)(3)(A)(i). Consequently, he contends that the withdrawal on May 8, 1987, and deposit on July 7, 1987, resulted in a qualified rollover of $ 120,000. Therefore, since there were no additional contributions and the trustee-to-trustee transfers on December 7, 1987, and November 25, 1988, were not rollovers and were nontaxable events, petitioner argues that the balance in his Fidelity IRA at the end of 1988 was not the result of an excess contribution but was the remainder of the funds which were deposited pursuant to the qualified rollover of $ 120,000 on July 7, 1987. *409 Respondent's position is that the withdrawal and deposit on February 5, 1987, was a qualified rollover, exempt from taxation under section 408(d)(3)(A)(i). Since, under section 408(d)(3)(B), the rollover exemption can be used only once during any 1-year period, the $ 120,000 deposit on July 7, 1987, was not a qualified rollover but was an excess contribution to an IRA, $ 58,443 of which remained on deposit in petitioner's Fidelity IRA at the end of 1988. The parties agree that the question of whether the balance on December 31, 1988, in petitioner's Fidelity IRA is an excess contribution depends upon the characterization of the transaction on February 5, 1987. If the February 5, 1987, transaction was a trustee-to-trustee transfer, as petitioner contends, the balance in his IRA account on December 31, 1988, would not be an excess contribution. However, if the February 5, 1987, transaction was a qualified rollover, the balance on December 31, 1988, would be an excess contribution as respondent contends. This precise issue, the characterization of petitioner's February 5, 1987, transaction, has already been decided by this Court in Martin v. Commissioner, T.C. Memo. 1992-331. *410 Petitioner, here, was the litigant in Martin v. Commissioner, supra.In that case, this Court held that petitioner's February 5, 1987, transaction was not a trustee-to-trustee or direct transfer of funds, but rather was a qualified rollover of petitioner's IRA. Thus, his withdrawal of $ 164,596.13 on May 8, 1987, and another withdrawal of $ 10,000 on September 3, 1987, constituted taxable IRA distributions. A decision was entered in that case in favor of respondent on these taxable distributions. On February 22, 1993, the United States Court of Appeals for the Fifth Circuit, in an unpublished opinion, affirmed Martin v. Commissioner, supra.
In Martin v. Commissioner, supra, this Court held that petitioner's February 5, 1987, withdrawal and deposit on the same day "was a nontaxable IRA rollover described in section 408(d)(3)." Therefore, in this case, the doctrine of collateral estoppel applies against petitioner. Petitioner cannot relitigate in this case the characterization of the February 5, 1987, transaction. That transaction was held to be a qualified rollover, and *411 the Court here will not revisit that issue. Thus, because petitioner effected a qualified rollover on February 5, 1987, his two subsequent withdrawals of $ 164,596.13 and $ 10,000 during 1987 constituted taxable IRA distributions. The $ 120,000 contribution to the IRA on July 7, 1987, could not constitute a qualified rollover, as petitioner contends, because the contribution was made within 1 year of the previous February 5, 1987, rollover and, therefore, was not allowable under section 408(d)(3)(B). The $ 120,000 contribution on July 7, 1987, therefore, was an excess IRA contribution, which carried over into 1988 with the net amount of $ 58,443 remaining in the account on December 31, 1988. Collateral estoppel serves the dual purpose of protecting litigants from the burden of relitigating an identical issue in a subsequent proceeding and of promoting judicial economy by preventing unnecessary or redundant litigation. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979); see Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir. 1982); *412 Meier v. Commissioner, 91 T.C. 273, 282-283 (1988). Generally, the doctrine of collateral estoppel applies to prevent relitigation between the same parties of issues of law that were decided in an earlier proceeding on a different cause of action. Montana v. United States, 440 U.S. 147, 154-155 (1979); Commissioner v. Sunnen, supra at 598; Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990). Collateral estoppel also applies to findings of fact that were actually litigated and decided in an earlier proceeding between the same parties and that were essential to the judgment entered in the earlier proceeding. Montana v. United States, supra at 153; Meza v. General Battery Corp., 908 F.2d 1262, 1273 (5th Cir. 1990); Meier v. Commissioner, supra at 282; Peck v. Commissioner, supra at 166. Therefore, the Court here is bound by the holding in Martin v. Commissioner, supra, *413 that petitioner's February 5, 1987, transaction resulted in a qualified rollover under section 408(d)(3). Consequently, the $ 120,000 deposited by petitioner on July 7, 1987, was, as respondent determined, an excess contribution to petitioner's IRA and was not a qualified rollover. Sec. 408(d)(3)(B). The parties stipulated that, if respondent's position with respect to the February 5, 1987, transaction is correct, the amount of the excess contributions in petitioner's Fidelity IRA on December 31, 1988, is $ 56,443. That was the balance in petitioner's IRA, $ 58,443, reduced by the deduction petitioner is entitled to for a contribution to an IRA in 1988, $ 2,000. Petitioner did not make an actual contribution in 1988; however, this is a reduction provided for in section 4973(b)(2)(C). Under section 4973(a), in the case of an IRA "there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's accounts * * * (determined as one of the close of the taxable year). The amount of such tax for any taxable year shall not exceed 6 percent of the value of the account * * * (determined as of the close of the taxable *414 year)." Section 4973(b) defines the term "excess contributions" as the sum of (1) the excess of the amount contributed to the IRA for the taxable year (other than a rollover) over the amount allowable as a deduction under section 219 for such contribution, and (2) the amount determined under section 4973(b) for the preceding taxable year reduced by certain distributions and reduced by the excess of the amount allowable as a deduction under section 219 for the year over the amount actually contributed. Therefore, the Court holds that, under section 4973, petitioner is liable for an excise tax for 1988 of $ 3,386.58, 6 percent of the excess contribution of $ 56,443. [2] Petitioner contends on brief that this amount should be reduced by taxes paid on a $ 16,000 IRA distribution included in petitioner's 1988 income and "modified" by the amount earned in the IRA account. The Court finds petitioner's position without merit. Petitioner stipulated to the amount of "excess contributions" for 1988. Pursuant to the definition of excess contribution in section 4973(b), the $ 56,443 already takes into account "distributions out of the account for the taxable year which were included in the *415 gross income of the payee under section 408(d)(1)". Sec. 4973(b)(2)(A). In addition, there is no merit in petitioner's confusing and poorly articulated argument regarding how the amount owed should be "modified" by any funds earned within the IRA. It appears that the basis for petitioner's argument is his concern that the excise tax is being imposed on earnings in the IRA and, as such, earnings do not constitute contributions. However, petitioner did not show that any amount was earned in the IRA that was not offset by losses realized in the IRA. The Court, therefore, rejects petitioner's argument. To reflect the foregoing, Decision will be entered for respondent in the amount of $ 3,386.58. *416 Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Court notes that, in the notice of deficiency, the deficiency was determined to be $ 5,640. At trial, respondent explained that the amount in the notice of deficiency was calculated based upon a balance in petitioner's Fidelity IRA in excess on the amount respondent now concedes is the correct balance of $ 58,443.↩